(Slip Opinion)    OCTOBER TERM, 2008    1

NOTE: Where it is feasible, a syllabus (headnote) will be released, as is
being done in connection with this case, at the time the opinion is issued.
The syllabus constitutes no part of the opinion of the Court but has been
prepared by the Reporter of Decisions for the convenience of the reader.
See *United States* v. *Detroit Timber & Lumber Co.,* 200 U. S. 321, 337.

# SUPREME COURT OF THE UNITED STATES

Syllabus

## NKEN *v*. HOLDER, ATTORNEY GENERAL

### CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

No. 08–681.   Argued January 21, 2009—Decided April 22, 2009

Petitioner Nken sought an order from the Fourth Circuit staying his removal to Cameroon while his petition for review of a Board of Immigration Appeals order denying his motion to reopen removal proceedings was pending.  Nken acknowledged that Circuit precedent required an alien seeking such a stay to satisfy 8 U. S. C. §1252(f)(2), which sharply restricts the availability of injunctions blocking the removal of an alien from this country, but argued that a court's authority to stay a removal order should instead be controlled by the traditional criteria governing stays.  The Court of Appeals denied the stay motion without comment.

*Held:* Traditional stay factors, not the demanding §1252(f)(2) standard, govern a court of appeals' authority to stay an alien's removal pending judicial review.  Pp. 3–17.

  (a) This question stems from changes made in the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA), which "repealed the old judicial-review scheme set forth in [8 U. S. C.] §1105a [(1994 ed.),] and instituted a new (and significantly more restrictive) one in . . . §1252," *Reno* v. *American-Arab Anti-Discrimination Comm.*, 525 U. S. 471, 475 (*AAADC*).  Because courts of appeals lacked jurisdiction before IIRIRA to review the removal order of an alien who had already left the United States, see §1105a(c), most aliens who appealed such a decision were given an automatic stay of the removal order pending judicial review, see §1105a(a)(3).  Three changes IIRIRA made are of particular importance here.  First, the repeal of §1105a allows courts to adjudicate a petition for review even if the alien is removed while the petition is pending.  Second, the presumption of an automatic stay was repealed and replaced with a provision stating that "[s]ervice of the petition

. . . does not stay the removal of an alien pending the court's decision on the petition, unless the court orders otherwise." §1252(b)(3)(B). Finally, IIRIRA provided that "no court shall enjoin the removal of any alien . . . unless [he] shows by clear and convincing evidence that the entry or execution of such order is prohibited as a matter of law." §1252(f)(2). Pp. 3–5.

(b) The parties dispute what standard a court should apply when determining whether to grant a stay. Petitioner argues that the "traditional" stay standard should apply, meaning a court should consider "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether [he] will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties . . . ; and (4) where the public interest lies." *Hilton* v. *Braunskill*, 481 U. S. 770, 776. The Government argues that §1252(f) should govern, meaning an alien must show "by clear and convincing evidence that the entry or execution of [the removal] order is prohibited as a matter of law." Pp. 5–6.

(c) An appellate court's power to hold an order in abeyance while it assesses the order's legality has been described as inherent, and part of a court's "traditional equipment for the administration of justice." *Scripps-Howard Radio, Inc.* v. *FCC*, 316 U. S. 4, 9–10. That power allows a court to act responsibly, by ensuring that the time the court takes to bring considered judgment to bear on the matter before it does not result in irreparable injury to the party aggrieved by the order under review. But a stay "is not a matter of right, even if irreparable injury might otherwise result to the appellant." *Virginian R. Co.* v. *United States*, 272 U. S. 658, 672. The parties and the public, while entitled to both careful review and a meaningful decision, are also entitled to the prompt execution of orders that the legislature has made final. Pp. 6–7.

(d) Section 1252(f) does not refer to "stays," but rather to authority to "enjoin the removal of any alien." An injunction and a stay serve different purposes. The former is the means by which a court tells someone what to do or not to do. While in a general sense many orders may be considered injunctions, the term is typically used to refer to orders that operate *in personam*. By contrast, a stay operates upon the judicial proceeding itself, either by halting or postponing some portion of it, or by temporarily divesting an order of enforceability. An alien seeking a stay of removal pending adjudication of a petition for review does not ask for a coercive order against the government, but instead asks to temporarily set aside the removal order. That kind of stay, "relat[ing] only to the conduct or progress of litigation before th[e] court[,] ordinarily is not considered an injunction." *Gulfstream Aerospace Corp.* v. *Mayacamas Corp.*, 485 U. S. 271, 279.

That §1252(f)(2) does not comfortably cover stays is evident in Congress's use of the word "stay" in subsection (b)(3)(B) but not subsection (f)(2), particularly since those subsections were enacted as part of a unified overhaul of judicial review. The statute's structure also clearly supports petitioner's reading: Because subsection (b)(3)(B) changed the basic rules covering stays of removal, the natural place to locate an amendment to the standard governing stays would have been subsection (b)(3)(B), not a provision four subsections later that makes no mention of stays. Pp. 8–12.

(e) Subsection (f)(2)'s application would not fulfill the historic office of a stay, which is to hold the matter under review in abeyance to allow the appellate court sufficient time to decide the merits. Under subsection (f)(2), a stay would only be granted after the court in effect *decides* the merits, in an expedited manner. The court would have to do so under a "clear and convincing evidence" standard that does not so much preserve the availability of subsequent review as render it redundant. Nor would subsection (f)(2) allow courts "to prevent irreparable injury to the parties or to the public" pending review, *Scripps-Howard*, 316 U. S., at 9; the subsection on its face does not permit any consideration of harm, irreparable or otherwise. In short, applying §1252(f)(2) in the stay context would result in something that does not remotely look like a stay. As in *Scripps-Howard*, the Court is loath to conclude that Congress would, "without clearly expressing such a purpose, deprive the Court of Appeals of its customary power to stay orders under review." *Id.*, at 11. The Court is not convinced Congress did so in §1252(f)(2). Pp. 12–13.

(f) The parties dispute what the traditional four-factor standard entails. A stay is not a matter of right, and its issuance depends on the circumstances of a particular case. The first factor, a strong showing of a likelihood of success on the merits, requires more than a mere possibility that relief will be granted. Similarly, simply showing some possibility of irreparable injury fails to satisfy the second factor. See *Winter* v. *Natural Resources Defense Council, Inc.*, 555 U. S. ___, ___. Although removal is a serious burden for many aliens, that burden alone cannot constitute the requisite irreparable injury. An alien who has been removed may continue to pursue a petition for review, and those aliens who prevail can be afforded effective relief by facilitation of their return, along with restoration of the immigration status they had upon removal. The third and fourth factors, harm to the opposing party and the public interest, merge when the Government is the opposing party. In considering them, courts must be mindful that the Government's role as the respondent in every removal proceeding does not make its interest in each one negligible. There is always a public interest in prompt execution of removal or-

ders, see *AAADC, supra*, at 490, and that interest may be heightened by circumstances such as a particularly dangerous alien, or an alien who has substantially prolonged his stay by abusing the processes provided to him. A court asked to stay removal cannot simply assume that the balance of hardships will weigh heavily in the applicant's favor. Pp. 13–16.

Vacated and remanded.

ROBERTS, C. J., delivered the opinion of the Court, in which STEVENS, SCALIA, KENNEDY, SOUTER, GINSBURG, and BREYER, JJ., joined. KENNEDY, J., filed a concurring opinion, in which SCALIA, J., joined. ALITO, J., filed a dissenting opinion, in which THOMAS, J., joined.

NOTICE: This opinion is subject to formal revision before publication in the preliminary print of the United States Reports. Readers are requested to notify the Reporter of Decisions, Supreme Court of the United States, Washington, D. C. 20543, of any typographical or other formal errors, in order that corrections may be made before the preliminary print goes to press.

# SUPREME COURT OF THE UNITED STATES

———————

No. 08–681

———————

## JEAN MARC NKEN, PETITIONER *v.* ERIC H. HOLDER, JR., ATTORNEY GENERAL

### ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

[April 22, 2009]

CHIEF JUSTICE ROBERTS delivered the opinion of the Court.

It takes time to decide a case on appeal. Sometimes a little; sometimes a lot. "No court can make time stand still" while it considers an appeal, *Scripps-Howard Radio, Inc.* v. *FCC*, 316 U. S. 4, 9 (1942), and if a court takes the time it needs, the court's decision may in some cases come too late for the party seeking review. That is why it "has always been held, . . . that as part of its traditional equipment for the administration of justice, a federal court can stay the enforcement of a judgment pending the outcome of an appeal." *Id.*, at 9–10 (footnote omitted). A stay does not make time stand still, but does hold a ruling in abeyance to allow an appellate court the time necessary to review it.

This case involves a statutory provision that sharply restricts the circumstances under which a court may issue an injunction blocking the removal of an alien from this country. The Court of Appeals concluded, and the Government contends, that this provision applies to the granting of a stay by a court of appeals while it considers the

legality of a removal order. Petitioner disagrees, and
maintains that the authority of a court of appeals to stay
an order of removal under the traditional criteria govern-
ing stays remains fully intact, and is not affected by the
statutory provision governing injunctions. We agree with
petitioner, and vacate and remand for application of the
traditional criteria.

I

Jean Marc Nken, a citizen of Cameroon, entered the
United States on a transit visa in April 2001. In Decem-
ber 2001, he applied for asylum under 8 U. S. C. §1158,
withholding of removal under §1231(b)(3), and deferral of
removal under the Convention Against Torture and Other
Cruel, Inhuman, or Degrading Treatment or Punishment,
art. 3, S. Treaty Doc. No. 100–20, p. 20, 1465 U. N. T. S.
85, see 8 CFR §208.17 (2008). In his application, Nken
claimed he had been persecuted in the past for participa-
tion in protests against the Cameroonian Government,
and would be subject to further persecution if he returns
to Cameroon.

An Immigration Judge denied Nken relief after conclud-
ing that he was not credible. The Board of Immigration
Appeals (BIA) affirmed, and also declined to remand for
consideration of Nken's application for adjustment of
status based on his marriage to an American citizen.
After the BIA denied a motion to reopen, Nken filed a
petition for review of the BIA's removal order in the Court
of Appeals for the Fourth Circuit. His petition was denied.
Nken then filed a second motion to reopen, which was also
denied, followed by a second petition for review, which was
denied as well.

Nken filed a third motion to reopen, this time alleging
that changed circumstances in Cameroon made his perse-
cution more likely. The BIA denied the motion, finding
that Nken had not presented sufficient facts or evidence of

changed country conditions. Nken again sought review in the Court of Appeals, and also moved to stay his deportation pending resolution of his appeal. In his motion, Nken recognized that Fourth Circuit precedent required an alien seeking to stay a removal order to show by "clear and convincing evidence" that the order was "prohibited as a matter of law," 8 U. S. C. §1252(f)(2). See *Teshome-Gebreegziabher* v. *Mukasey*, 528 F. 3d 330 (CA4 2008). Nken argued, however, that this standard did not govern. The Court of Appeals denied Nken's motion without comment. App. 74.

Nken then applied to this Court for a stay of removal pending adjudication of his petition for review, and asked in the alternative that we grant certiorari to resolve a split among the Courts of Appeals on what standard governs a request for such a stay. Compare *Teshome-Gebreegziabher*, *supra*, at 335, and *Weng* v. *U. S. Attorney General*, 287 F. 3d 1335 (CA11 2002), with *Arevalo* v. *Ashcroft*, 344 F. 3d 1 (CA1 2003), *Mohammed* v. *Reno*, 309 F. 3d 95 (CA2 2002), *Douglas* v. *Ashcroft*, 374 F. 3d 230 (CA3 2004), *Tesfamichael* v. *Gonzales*, 411 F. 3d 169 (CA5 2005), *Bejjani* v. *INS*, 271 F. 3d 670 (CA6 2001), *Hor* v. *Gonzales*, 400 F. 3d 482 (CA7 2005), and *Andreiu* v. *Ashcroft*, 253 F. 3d 477 (CA9 2001) (en banc). We granted certiorari, and stayed petitioner's removal pending further order of this Court. *Nken* v. *Mukasey*, 555 U. S. ___ (2008).

## II

The question we agreed to resolve stems from changes in judicial review of immigration procedures brought on by the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA), 110 Stat. 3009–546, which substantially amended the Immigration and Nationality Act (INA), 8 U. S. C. §1101 *et seq.* When Congress passed IIRIRA, it "repealed the old judicial-review scheme set forth in [8 U. S. C.] §1105a and instituted a new (and

significantly more restrictive) one in 8 U. S. C. §1252." *Reno* v. *American-Arab Anti-Discrimination Comm.*, 525 U. S. 471, 475 (1999) (*AAADC*). The new review system substantially limited the availability of judicial review and streamlined all challenges to a removal order into a single proceeding: the petition for review. See, *e.g.*, 8 U. S. C. §1252(a)(2) (barring review of certain removal orders and exercises of executive discretion); §1252(b)(3)(C) (establishing strict filing and briefing deadlines for review proceedings); §1252(b)(9) (consolidating challenges into petition for review). Three changes effected by IIRIRA are of particular importance to this case.

Before IIRIRA, courts of appeals lacked jurisdiction to review the deportation order of an alien who had already left the United States. See §1105a(c) (1994 ed.) ("An order of deportation or of exclusion shall not be reviewed by any court . . . if [the alien] has departed from the United States after the issuance of the order"). Accordingly, an alien who appealed a decision of the BIA was typically entitled to remain in the United States for the duration of judicial review. This was achieved through a provision providing most aliens with an automatic stay of their removal order while judicial review was pending. See §1105a(a)(3) ("The service of the petition for review . . . shall stay the deportation of the alien pending determination of the petition by the court, unless the court otherwise directs").

IIRIRA inverted these provisions to allow for more prompt removal. First, Congress lifted the ban on adjudication of a petition for review once an alien has departed. See IIRIRA §306(b), 110 Stat. 3009–612 (repealing §1105a). Second, because courts were no longer prohibited from proceeding with review once an alien departed, see *Dada* v. *Mukasey*, 554 U. S. 1, ___ (2008) (slip op., at 19–20), Congress repealed the presumption of an automatic stay, and replaced it with the following: "Service of the petition on the officer or employee does not stay the re-

moval of an alien pending the court's decision on the petition, unless the court orders otherwise." 8 U. S. C. §1252(b)(3)(B) (2006 ed.).

Finally, IIRIRA restricted the availability of injunctive relief:

"Limit on injunctive relief

"(1) In general

"Regardless of the nature of the action or claim or of the identity of the party or parties bringing the action, no court (other than the Supreme Court) shall have jurisdiction or authority to enjoin or restrain the operation of the provisions of part IV of this subchapter, as amended by [IIRIRA], other than with respect to the application of such provisions to an individual alien against whom proceedings under such part have been initiated.

"(2) Particular cases

"Notwithstanding any other provision of law, no court shall enjoin the removal of any alien pursuant to a final order under this section unless the alien shows by clear and convincing evidence that the entry or execution of such order is prohibited as a matter of law." §1252(f).

This provision, particularly subsection (f)(2), is the source of the parties' disagreement.

### III

The parties agree that courts of appeals considering a petition for review of a removal order may prevent that order from taking effect and therefore block removal while adjudicating the petition. They disagree over the standard a court should apply in deciding whether to do so. Nken argues that the "traditional" standard for a stay applies. Under that standard, a court considers four factors: "(1) whether the stay applicant has made a strong showing

that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Hilton* v. *Braunskill*, 481 U. S. 770, 776 (1987).

The Government disagrees, arguing that a stay is simply a form of injunction, or alternatively that the relief petitioner seeks is more accurately characterized as injunctive, and therefore that the limits on injunctive relief set forth in subsection (f)(2) apply. Under that provision, a court may not "enjoin" the removal of an alien subject to a final removal order, "unless the alien shows by clear and convincing evidence that the entry or execution of such order is prohibited as a matter of law." 8 U. S. C. §1252(f)(2). Mindful that statutory interpretation turns on "the language itself, the specific context in which that language is used, and the broader context of the statute as a whole," *Robinson* v. *Shell Oil Co.*, 519 U. S. 337, 341 (1997), we conclude that the traditional stay factors—not §1252(f)(2)—govern a request for a stay pending judicial review.

## A

An appellate court's power to hold an order in abeyance while it assesses the legality of the order has been described as "inherent," preserved in the grant of authority to federal courts to "issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law," All Writs Act, 28 U. S. C. §1651(a). See *In re McKenzie*, 180 U. S. 536, 551 (1901). The Court highlighted the historic pedigree and importance of the power in *Scripps-Howard*, 316 U. S. 4, holding in that case that Congress's failure expressly to confer the authority in a statute allowing appellate review should not be taken as an implicit denial of that power.

The Court in *Scripps-Howard* did not decide what "criteria . . . should govern the Court in exercising th[e] power" to grant a stay. *Id.*, at 17. Nor did the Court consider under what circumstances Congress could deny that authority. See *ibid.* The power to grant a stay pending review, however, was described as part of a court's "traditional equipment for the administration of justice." *Id.*, at 9–10. That authority was "firmly imbedded in our judicial system," "consonant with the historic procedures of federal appellate courts," and "a power as old as the judicial system of the nation." *Id.*, at 13, 17.

The authority to hold an order in abeyance pending review allows an appellate court to act responsibly. A reviewing court must bring considered judgment to bear on the matter before it, but that cannot always be done quickly enough to afford relief to the party aggrieved by the order under review. The choice for a reviewing court should not be between justice on the fly or participation in what may be an "idle ceremony." *Id.*, at 10. The ability to grant interim relief is accordingly not simply "[a]n historic procedure for preserving rights during the pendency of an appeal," *id.*, at 15, but also a means of ensuring that appellate courts can responsibly fulfill their role in the judicial process.

At the same time, a reviewing court may not resolve a conflict between considered review and effective relief by reflexively holding a final order in abeyance pending review. A stay is an "intrusion into the ordinary processes of administration and judicial review," *Virginia Petroleum Jobbers Assn.* v. *Federal Power Comm'n*, 259 F. 2d 921, 925 (CADC 1958) (*per curiam*), and accordingly "is not a matter of right, even if irreparable injury might otherwise result to the appellant," *Virginian R. Co.* v. *United States*, 272 U. S. 658, 672 (1926). The parties and the public, while entitled to both careful review and a meaningful decision, are also generally entitled to the prompt execu-

tion of orders that the legislature has made final.

### B

Subsection (f)(2) does not by its terms refer to "stays" but instead to the authority to "enjoin the removal of any alien." The parties accordingly begin by disputing whether a stay is simply a type of injunction, covered by the term "enjoin," or a different form of relief. An injunction and a stay have typically been understood to serve different purposes. The former is a means by which a court tells someone what to do or not to do. When a court employs "the extraordinary remedy of injunction," *Weinberger* v. *Romero-Barcelo*, 456 U. S. 305, 312 (1982), it directs the conduct of a party, and does so with the backing of its full coercive powers. See Black's Law Dictionary 784 (6th ed. 1990) (defining "injunction" as "[a] court order prohibiting someone from doing some specified act or commanding someone to undo some wrong or injury").

It is true that "'[i]n a general sense, every order of a court which commands or forbids is an injunction; but in its accepted legal sense, an injunction is a judicial process or mandate operating *in personam*.'" *Id.*, at 800 (8th ed. 2004) (quoting 1 H. Joyce, A Treatise on the Law Relating to Injunctions §1, pp. 2–3 (1909)). This is so whether the injunction is preliminary or final; in both contexts, the order is directed at someone, and governs that party's conduct.

By contrast, instead of directing the conduct of a particular actor, a stay operates upon the judicial proceeding itself. It does so either by halting or postponing some portion of the proceeding, or by temporarily divesting an order of enforceability. See Black's, *supra*, at 1413 (6th ed. 1990) (defining "stay" as "a suspension of the case or some designated proceedings within it").

A stay pending appeal certainly has some functional

overlap with an injunction, particularly a preliminary one. Both can have the practical effect of preventing some action before the legality of that action has been conclusively determined. But a stay achieves this result by temporarily suspending the source of authority to act—the order or judgment in question—not by directing an actor's conduct. A stay "simply suspend[s] judicial alteration of the status quo," while injunctive relief "grants judicial intervention that has been withheld by lower courts." *Ohio Citizens for Responsible Energy, Inc.* v. *NRC*, 479 U. S. 1312, 1313 (1986) (SCALIA, J., in chambers); see also *Brown* v. *Gilmore*, 533 U. S. 1301, 1303 (2001) (Rehnquist, C. J., in chambers) ("[A]pplicants are seeking not merely a stay of a lower court judgment, but an injunction against the enforcement of a presumptively valid state statute"); *Turner Broadcasting System, Inc.* v. *FCC*, 507 U. S. 1301, 1302 (1993) (same) ("By seeking an injunction, applicants request that I issue an order *altering* the legal status quo").

An alien seeking a stay of removal pending adjudication of a petition for review does not ask for a coercive order against the Government, but rather for the temporary setting aside of the source of the Government's authority to remove. Although such a stay acts to "ba[r] Executive branch officials from removing [the applicant] from the country," *post*, at 7 (ALITO, J., dissenting), it does so by returning to the status quo—the state of affairs before the removal order was entered.* That kind of stay, "relat[ing]

_____

*The dissent maintains that "[a]n order preventing an executive officer from [enforcing a removal order] does not 'simply suspend judicial alteration of the status quo,'" but instead "blocks executive officials from carrying out what they view as proper enforcement of the immigration laws." *Post*, at 7 (quoting *Ohio Citizens for Responsible Energy, Inc.* v. *NRC*, 479 U. S. 1312, 1313 (1986) (SCALIA, J., in chambers)). But the relief sought here would simply suspend *administrative* alteration of the status quo, and we have long recognized that such

only to the conduct or progress of litigation before th[e] court[,] ordinarily is not considered an injunction." *Gulfstream Aerospace Corp.* v. *Mayacamas Corp.*, 485 U. S. 271, 279 (1988); see Fed. Rule App. Proc. 8(a)(1)(A) (referring to interim relief from "the judgment or order of a district court pending appeal" as "a stay"). Whether such a stay might technically be called an injunction is beside the point; that is not the label by which it is generally known. The sun may be a star, but "starry sky" does not refer to a bright summer day. The terminology of subsection (f)(2) does not comfortably cover stays.

This conclusion is reinforced by the fact that when Congress wanted to refer to a stay pending adjudication of a petition for review in §1252, it used the word "stay." In subsection (b)(3)(B), under the heading "Stay of order," Congress provided that service of a petition for review "does not stay the removal of an alien pending the court's decision on the petition, unless the court orders otherwise." 8 U. S. C. §1252(b)(3)(B). By contrast, the language of subsection (f) says nothing about stays, but is instead titled "Limit on injunctive relief," and refers to the authority of courts to "enjoin the removal of any alien."

---

temporary relief from an administrative order—just like temporary relief from a court order—is considered a stay. See *Scripps-Howard Radio, Inc.* v. *FCC*, 316 U. S. 4, 10–11 (1942).

The dissent would distinguish *Scripps-Howard* on the ground that Nken does not really seek to stay a final order of removal, but instead seeks "to enjoin the Executive Branch from enforcing his removal order pending judicial review of an entirely separate order [denying a motion to reopen]." *Post*, at 4, n. But a determination that the BIA should have granted Nken's motion to reopen would necessarily extinguish the finality of the removal order. See Tr. of Oral Arg. for Respondent 42 ("[I]f the motion to reopen is granted, that vacates the final order of removal and, therefore, there is no longer a final order of removal pursuant to which the alien could be removed"). The relief sought here is properly termed a "stay" because it suspends the effect of the removal order.

§1252(f)(2).

"[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *INS* v. *Cardoza-Fonseca*, 480 U. S. 421, 432 (1987) (internal quotation marks omitted). This is particularly true here, where subsections (b)(3)(B) and (f)(2) were enacted as part of a unified overhaul of judicial review procedures.

Subsection (b)(3)(B) changed the basic rules covering stays of removal, and would have been the natural place to locate an amendment to the traditional standard governing the grant of stays. Under the Government's view, however, Congress placed such a provision four subsections later, in a subsection that makes no mention of stays, next to a provision prohibiting classwide injunctions against the operation of removal provisions. See 8 U. S. C. §1252(f)(1) (permitting injunctions only "with respect to the application of such provisions to an individual alien"); *AAADC*, 525 U. S., at 481–482. Although the dissent "would not read too much into Congress' decision to locate such a provision in one subsection rather than in another," *post*, at 8, the Court frequently takes Congress's structural choices into consideration when interpreting statutory provisions. See, *e.g.*, *Florida Dept. of Revenue* v. *Piccadilly Cafeterias, Inc.*, 554 U. S. \_\_\_, \_\_\_ (2008) (slip op., at 13).

The Government counters that petitioner's view "fails to give any operative effect to Section 1252(f)(2)." Brief for Respondent 32. Initially, this argument undercuts the Government's textual reading. It is one thing to propose that "enjoin" in subsection (f)(2) covers a broad spectrum of court orders and relief, including both stays and more typical injunctions. It is quite another to suggest that Congress used "enjoin" to refer *exclusively* to stays, so that a failure to include stays in subsection (f)(2) would render

the provision superfluous. If nothing else, the terms are by no means synonymous.

Leaving that aside, there is something to the Government's point; the exact role of subsection (f)(2) under petitioner's view is not easy to explain. Congress may have been concerned about the possibility that courts would enjoin application of particular provisions of the INA, see 8 U. S. C. §1252(f)(1) (prohibiting injunctions "other than with respect to the application of [Section IV of the INA] to an individual alien"), or about injunctions that might be available under the limited habeas provisions of subsection (e). Or perhaps subsection (f)(2) was simply included as a catchall provision raising the bar on any availability (even unforeseeable availability) of "the extraordinary remedy of injunction." *Weinberger*, 456 U. S., at 312. In any event, the Government's point is not enough to outweigh the strong indications that subsection (f)(2) is not reasonably understood to be directed at stays.

C

Applying the subsection (f)(2) standard to stays pending appeal would not fulfill the historic office of such a stay. The whole idea is to hold the matter under review in abeyance because the appellate court lacks sufficient time to decide the merits. Under the subsection (f)(2) standard, however, a stay would only be granted after the court in effect *decides* the merits, in an expedited manner. The court would have to do so under a standard—"clear and convincing evidence"—that does not so much preserve the availability of subsequent review as render it redundant. Subsection (f)(2), in short, would invert the customary role of a stay, requiring a definitive merits decision earlier rather than later.

The authority to grant stays has historically been justified by the perceived need "to prevent irreparable injury to the parties or to the public" pending review. *Scripps-*

*Howard*, 316 U. S., at 9. Subsection (f)(2) on its face, however, does not allow any consideration of harm, irreparable or otherwise, even harm that may deprive the movant of his right to petition for review of the removal order. Subsection (f)(2) does not resolve the dilemma stays historically addressed: what to do when there is insufficient time to resolve the merits and irreparable harm may result from delay. The provision instead requires deciding the merits under a higher standard, without regard to the prospect of irreparable harm.

In short, applying the subsection (f)(2) standard in the stay context results in something that does not remotely look like a stay. Just like the Court in *Scripps-Howard*, we are loath to conclude that Congress would, "without clearly expressing such a purpose, deprive the Court of Appeals of its customary power to stay orders under review." *Id.*, at 11. Subsection (f)(2) would certainly deprive courts of their "customary" stay power. Our review does not convince us that Congress did that in subsection (f)(2). The four-factor test is the "traditional" one, *Hilton*, 481 U. S., at 777, and the Government has not overcome the "presumption favoring the retention of long-established and familiar principles, except when a statutory purpose to the contrary is evident." *Isbrandtsen Co.* v. *Johnson*, 343 U. S. 779, 783 (1952). We agree with petitioner that an alien need not satisfy the demanding standard of §1252(f)(2) when asking a court of appeals to stay removal pending judicial review.

IV

So what standard does govern? The question presented, as noted, offers the alternative of "'the traditional test for stays,'" 555 U. S., at \_\_\_, but the parties dispute what that test is. See Brief for Respondent 46 ("[T]he four-part standard requires a more demanding showing than petitioner suggests"); Reply Brief for Petitioner 26 ("The Government

argues . . . that the [stay] test should be reformulated").

"A stay is not a matter of right, even if irreparable injury might otherwise result." *Virginian R. Co.*, 272 U. S., at 672. It is instead "an exercise of judicial discretion," and "[t]he propriety of its issue is dependent upon the circumstances of the particular case." *Id.*, at 672–673; see *Hilton*, *supra*, at 777 ("[T]he traditional stay factors contemplate individualized judgments in each case"). The party requesting a stay bears the burden of showing that the circumstances justify an exercise of that discretion. See, *e.g.*, *Clinton* v. *Jones*, 520 U. S. 681, 708 (1997); *Landis* v. *North American Co.*, 299 U. S. 248, 255 (1936).

The fact that the issuance of a stay is left to the court's discretion "does not mean that no legal standard governs that discretion. . . . '[A] motion to [a court's] discretion is a motion, not to its inclination, but to its judgment; and its judgment is to be guided by sound legal principles.'" *Martin* v. *Franklin Capital Corp.*, 546 U. S. 132, 139 (2005) (quoting *United States* v. *Burr*, 25 F. Cas. 30, 35 (No. 14,692d) (CC Va. 1807) (Marshall, C. J.)). As noted earlier, those legal principles have been distilled into consideration of four factors: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Hilton*, *supra*, at 776. There is substantial overlap between these and the factors governing preliminary injunctions, see *Winter* v. *Natural Resources Defense Council, Inc.*, 555 U. S. ___, ___ (2008) (slip op., at 14); not because the two are one and the same, but because similar concerns arise whenever a court order may allow or disallow anticipated action before the legality of that action has been conclusively determined.

The first two factors of the traditional standard are the

most critical. It is not enough that the chance of success on the merits be "better than negligible." *Sofinet* v. *INS*, 188 F. 3d 703, 707 (CA7 1999) (internal quotation marks omitted). Even petitioner acknowledges that "[m]ore than a mere 'possibility' of relief is required." Reply Brief for Petitioner 21 (quoting Brief for Respondent 47). By the same token, simply showing some "possibility of irreparable injury," *Abbassi* v. *INS*, 143 F. 3d 513, 514 (CA9 1998), fails to satisfy the second factor. As the Court pointed out earlier this Term, the "'possibility' standard is too lenient." *Winter*, *supra*, at ___ (slip op., at 12).

Although removal is a serious burden for many aliens, it is not categorically irreparable, as some courts have said. See, *e.g.*, *Ofosu* v. *McElroy*, 98 F. 3d 694, 699 (CA2 1996) ("[O]rdinarily, when a party seeks [a stay] pending appeal, it is deemed that exclusion is an irreparable harm"); see also Petitioner's Emergency Motion for a Stay 12 ("[T]he equities particularly favor the alien facing deportation in immigration cases where failure to grant the stay would result in deportation before the alien has been able to obtain judicial review").

The automatic stay prior to IIRIRA reflected a recognition of the irreparable nature of harm from removal before decision on a petition for review, given that the petition abated upon removal. Congress's decision in IIRIRA to allow continued prosecution of a petition after removal eliminated the reason for categorical stays, as reflected in the repeal of the automatic stay in subsection (b)(3)(B). It is accordingly plain that the burden of removal alone cannot constitute the requisite irreparable injury. Aliens who are removed may continue to pursue their petitions for review, and those who prevail can be afforded effective relief by facilitation of their return, along with restoration of the immigration status they had upon removal. See Brief for Respondent 44.

Once an applicant satisfies the first two factors, the

traditional stay inquiry calls for assessing the harm to the opposing party and weighing the public interest. These factors merge when the Government is the opposing party. In considering them, courts must be mindful that the Government's role as the respondent in every removal proceeding does not make the public interest in each individual one negligible, as some courts have concluded. See, *e.g.*, *Mohammed*, 309 F. 3d, at 102 (Government harm is nothing more than "one alien [being] permitted to remain while an appeal is decided"); *Ofosu*, *supra*, at 699 (the Government "suffers no offsetting injury" in removal cases).

Of course there is a public interest in preventing aliens from being wrongfully removed, particularly to countries where they are likely to face substantial harm. But that is no basis for the blithe assertion of an "absence of any injury to the public interest" when a stay is granted. Petitioner's Emergency Motion for a Stay 13. There is always a public interest in prompt execution of removal orders: The continued presence of an alien lawfully deemed removable undermines the streamlined removal proceedings IIRIRA established, and "permit[s] and prolong[s] a continuing violation of United States law." *AAADC*, 525 U. S., at 490. The interest in prompt removal may be heightened by the circumstances as well—if, for example, the alien is particularly dangerous, or has substantially prolonged his stay by abusing the processes provided to him. See *ibid.* ("Postponing justifiable deportation (in the hope that the alien's status will change—by, for example, marriage to an American citizen—or simply with the object of extending the alien's unlawful stay) is often the principal object of resistance to a deportation proceeding"). A court asked to stay removal cannot simply assume that "[o]rdinarily, the balance of hardships will weigh heavily in the applicant's favor." *Andreiu*, 253 F. 3d, at 484.

Opinion of the Court

\*      \*      \*

The Court of Appeals did not indicate what standard it applied in denying Nken a stay, but Circuit precedent required the application of §1252(f)(2).  Because we have concluded that §1252(f)(2) does not govern, we vacate the judgment of the Court of Appeals and remand for consideration of Nken's motion for a stay under the standards set forth in this opinion.

*It is so ordered.*

# SUPREME COURT OF THE UNITED STATES

No. 08–681

JEAN MARC NKEN, PETITIONER *v.* ERIC H. HOLDER, JR., ATTORNEY GENERAL

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

[April 22, 2009]

JUSTICE KENNEDY, with whom JUSTICE SCALIA joins, concurring.

I join the Court's opinion and agree that the traditional four-part standard governs an application to stay the removal of an alien pending judicial review. This is the less stringent of the two standards at issue. See *Kenyeres* v. *Ashcroft*, 538 U. S. 1301, 1303–1305 (2003) (KENNEDY, J., in chambers).

It seems appropriate to underscore that in most cases the debate about which standard should apply will have little practical effect provided the court considering the stay application adheres to the demanding standard set forth. A stay of removal is an extraordinary remedy that should not be granted in the ordinary case, much less awarded as of right. *Virginian R. Co.* v. *United States*, 272 U. S. 658, 672–673 (1926); see also *Winter* v. *Natural Resources Defense Council, Inc.*, 555 U. S. \_\_\_, \_\_\_ (2008) (slip op., at 14).

No party has provided the Court with empirical data on the number of stays granted, the correlation between stays granted and ultimate success on the merits, or similar matters. The statistics would be helpful so that experience can demonstrate whether this decision yields a fair and effective result. Then, too, Congress can evaluate whether its policy objectives are being realized by the

legislation it has enacted. Based on the Government's representations at oral argument, however, there are grounds for concern. See Tr. of Oral Arg. 35 ("[W]e do not have empirical data, . . . but [stays of removal] are—in the Ninth Circuit in our experience— . . . granted quite frequently"). This concern is of particular importance in those Circuits with States on our international borders. The Court of Appeals for Ninth Circuit, for example, considers over half of all immigration petitions filed nationwide, and immigration cases compose nearly half of the Ninth Circuit's docket. See Catterson, Symposium, Ninth Circuit Conference: Changes in Appellate Caseload and Its Processing, 48 Ariz. L. Rev. 287, 297 (2006).

Under either standard, even the less stringent standard the Court adopts today, courts should not grant stays of removal on a routine basis. The passage of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA), 110 Stat. 3009–546, reinforces this point. Before IIRIRA, aliens who left the United States no longer had the ability to seek review of their removal orders, see 8 U. S. C. §1105a(c) (1994 ed.) (repealed 1996), so they could more easily have established irreparable harm due to their removal. It is perhaps for this reason Congress decided to "stay the deportation of [an] alien pending determination of the petition by the court, unless the court otherwise direct[ed]." §1105a(a)(3) (same). IIRIRA, however, removed that prohibition (as well as the automatic stay provision), and courts may now review petitions after aliens have been removed. See Brief for Respondent 44; *ante*, at 4, 15; *post*, at 5, 9 (ALITO, J., dissenting).

This change should mean that obtaining a stay of removal is more difficult. Under the Court's four-part standard, the alien must show both irreparable injury and a likelihood of success on the merits, in addition to establishing that the interests of the parties and the public weigh in his or her favor. *Ante*, at 14–15. As the Court

explains, because aliens may continue to seek review and obtain relief after removal, "the burden of removal alone cannot constitute the requisite irreparable injury." *Ante*, at 15. As a result of IIRIRA there must be a particularized, irreparable harm beyond mere removal to justify a stay.

That is not to say that demonstration of irreparable harm, without more, is sufficient to justify a stay of removal. The Court has held that "[a] stay is not a matter of right, even if irreparable injury might otherwise result." *Virginian R. Co., supra*, at 672. When considering success on the merits and irreparable harm, courts cannot dispense with the required showing of one simply because there is a strong likelihood of the other. This is evident in the decisions of Justices of the Court applying the traditional factors. See, *e.g.*, *Curry* v. *Baker*, 479 U. S. 1301, 1302 (1986) (Powell, J., in chambers) ("It is no doubt true that, absent [a stay], the applicant here will suffer irreparable injury. This fact alone is not sufficient to justify a stay"); *Ruckelshaus* v. *Monsanto Co.*, 463 U. S. 1315, 1317 (1983) (Blackmun, J., in chambers) ("[L]ikelihood of success on the merits need not be considered . . . if the applicant fails to show irreparable injury from the denial of the stay"). As those decisions make clear, "'the applicant must meet a heavy burden of showing not only that the judgment of the lower court was erroneous on the merits, but also that the applicant will suffer irreparable injury if the judgment is not stayed pending his appeal.'" *Williams* v. *Zbaraz*, 442 U. S. 1309, 1311 (1979) (STEVENS, J., in chambers) (quoting *Whalen* v. *Roe*, 423 U. S. 1313, 1316 (1975) (Marshall, J., in chambers)).

# SUPREME COURT OF THE UNITED STATES

No. 08–681

JEAN MARC NKEN, PETITIONER *v.* ERIC H.
HOLDER, JR., ATTORNEY GENERAL

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF
APPEALS FOR THE FOURTH CIRCUIT

[April 22, 2009]

JUSTICE ALITO, with whom JUSTICE THOMAS joins,
dissenting.

The Court's decision nullifies an important statutory
provision that Congress enacted when it reformed the
immigration laws in 1996.  I would give effect to that
provision, and I therefore respectfully dissent.

I

When an alien is charged with being removable from the
United States, an Immigration Judge (IJ) conducts a
hearing, receives and considers evidence, and determines
whether the alien is removable.  See 8 U. S. C. §1229a(a);
8 CFR §§1240.1(a)(1)(i), (c) (2008).  If the IJ enters an
order of removal, that order becomes final when the alien's
appeal to the Board of Immigration Appeals (Board) is
unsuccessful or the alien declines to appeal to the Board.
See 8 U. S. C. §1101(47)(B); 8 CFR §§1241.1, 1241.31.
Once an order of removal has become final, it may be
executed at any time.  See 8 U. S. C. §§1231(a)(1)(B)(i),
1252(b)(8)(C); 8 CFR §1241.33.  Removal orders "are self-
executing orders, not dependent upon judicial enforce-
ment." *Stone* v. *INS*, 514 U. S. 386, 398 (1995).

After the removal order is final and enforceable, the
alien may file a motion to reopen before the IJ, see 8
U. S. C. §1229a(c)(7), or a petition for review before the

appropriate court of appeals, see §1252(a)(1). While either challenge is pending, the alien may ask the Executive Branch to stay its own hand. See 8 CFR §§241.6(a)–(b), 1241.6(a)–(b). If, however, the alien wants *a court* to restrain the Executive from executing a final and enforceable removal order, the alien must seek an injunction to do so. See 8 U. S. C. §1252(a)(1) (making a final order of removal subject to 28 U. S. C. §2349(b), which provides that an "interlocutory injunction" can "restrain" the "execution of" a final order). The plain text of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA), Div. C, 110 Stat. 3009–546, provides the relevant legal standard for granting such relief: "Notwithstanding any other provision of law, no court shall enjoin the removal of any alien pursuant to a final order under this section unless the alien shows by clear and convincing evidence that the entry or execution of such order is prohibited as a matter of law." 8 U. S. C. §1252(f)(2).

## II

In my view, petitioner's request for an order preventing his removal pending disposition of his current petition for review was governed by 8 U. S. C. §1252(f)(2). Petitioner is "remova[ble] . . . pursuant to a final order," and he sought a court order to "enjoin" the Executive Branch's execution of that removal.

## A

There is no dispute that petitioner is "remova[ble] . . . pursuant to a final order." *Ibid.* On March 4, 2005, the IJ determined that petitioner was removable under §1227(a)(1)(B) and denied his claims for asylum, withholding of removal, and protection under the Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment (CAT), Dec. 10, 1984, S. Treaty Doc. No. 100–20, 1465 U. N. T. S. 85. See App. 32–43.

Petitioner appealed to the Board, and on June 16, 2006, the Board affirmed. *Id.*, at 44–49. On that date, petitioner's order of removal became administratively final, and the Executive Branch became legally entitled to remove him from the United States. See 8 U. S. C. §1231(a)(1)(B)(i); 8 CFR §1241.33(a).

## B

The only remaining question, therefore, is whether the interim equitable relief that petitioner sought was an order "enjoin[ing]" his removal as that term is used in 8 U. S. C. §1252(f)(2). I believe that it was.

In ordinary usage, the term "enjoin" means to "require," "command," or "direct" an action, or to "require a person . . . to perform, or to abstain or desist from, some act." Black's Law Dictionary 529 (6th ed. 1990) (hereinafter Black's). See also Webster's Third New International Dictionary 754 (1993) (defining "enjoin" to mean "to direct, prescribe, or impose by order"; "to prohibit or restrain by a judicial order or decree"). When an alien subject to a final order of removal seeks to bar executive officials from acting upon that order pending judicial consideration of a petition for review, the alien is seeking to "enjoin" his or her removal. The alien is seeking an order "restrain[ing]" those officials and "requir[ing]" them to "abstain" from executing the order of removal.

The Court concludes that §1252(f)(2) does not apply in this case because, in the Court's view, that provision applies only to requests for an injunction and not to requests for a stay. That conclusion is wrong for at least three reasons.

## 1

First, a stay is "a kind of injunction," Black's 1413, as even the Court grudgingly concedes, see *ante*, at 10 (an order blocking an alien's removal pending judicial review

"might technically be called an injunction"). See also *Teshome-Gebreegziabher* v. *Mukasey,* 528 F. 3d 330, 333 (CA4 2008) (the term "stay" "is a subset of the broader term 'enjoin,'"); *Kijowska* v. *Haines*, 463 F. 3d 583, 589 (CA7 2006) (a stay "is a form of injunction"); *Weng* v. *United States Atty. Gen.*, 287 F. 3d 1335, 1338 (CA11 2002) ("[T]he plain meaning of enjoin includes the grant of a stay").*

Both statutes and judicial decisions refer to orders that "stay" legal proceedings as injunctions. For example, the Anti-Injunction Act provides that "[a] court of the United States may not grant an injunction to stay proceedings in a State court." 28 U. S. C. §2283. See also *Hill* v. *McDonough,* 547 U. S. 573, 578–580 (2006) (habeas petitioner sought injunction to stay his execution); *McMillen*

--------

*Thus, it is unremarkable that we have used the word "stay" to describe an injunction blocking an administrative order pending judicial review. See *Scripps-Howard Radio, Inc.* v. *FCC*, 316 U. S. 4 (1942); *ante*, at 9–10, n. Indeed, our decision in *Scripps-Howard*, *supra*, at 11—like the Court's decision today, *ante*, at 7, 14—relied heavily on *Virginian R. Co.* v. *United States*, 272 U. S. 658 (1926), the latter of which referred to "stays" as a subset of "injunctions." See *id.*, at 669 (noting that the power to issue a "stay" "to preserve the *status quo* pending appeal" is "an incident" of the power "to enjoin" an administrative order); see also *id.*, at 671–672 (referring interchangeably to a three-judge district court's power to issue "injunctions" and "stays"). In any event, both *Scripps-Howard* and *Virginian* are inapposite because petitioner here did not seek to "stay" his removal order pending judicial review of that order; rather, he sought to enjoin the Executive Branch from enforcing his removal order pending judicial review of an entirely separate order. See *Stone* v. *INS*, 514 U. S. 386, 395 (1995) (holding that the IJ's removal order and the Board's denial of a motion to reopen are "two separate final orders"); *Bak* v. *INS*, 682 F. 2d 441, 442 (CA3 1982) *(per curiam)* ("The general rule is that a motion to reopen deportation proceedings is a new, independently reviewable order"); Brief for Respondent 51–52 (differentiating petitioner's challenge to the IJ's removal order, which "became final well over a year ago," from "petitioner's latest challenge[, which] is currently pending" before the Court of Appeals); *id.*, at 13–14, 36–37 (similar).

v. *Anderson,* 95 U. S. 37, 42 (1877) ("[Petitioner] can, if he is wrongfully taxed, stay the proceeding for its collection by process of injunction"); *Nivens* v. *Gilchrist,* 319 F. 3d 151, 153 (CA4 2003) (denial of "injunction" to "stay [a] trial"); *Jove Eng., Inc.* v. *IRS,* 92 F. 3d 1539, 1546 (CA11 1996) (automatic stay is "essentially a court-ordered injunction"). And it is revealing that the standard that the Court adopts for determining whether a stay should be ordered is the standard that is used in weighing an application for a preliminary injunction. *Ante,* at 14 (adopting preliminary injunction standard set out in *Winter* v. *Natural Resources Defense Council, Inc.*, 555 U. S. ___, ___ (2008) (slip op., at 14)).

2

Second, the context surrounding IIRIRA's enactment suggests that §1252(f)(2) was an important—not a superfluous—statutory provision. This Court should interpret it accordingly.

IIRIRA was designed to expedite removal and restrict the ability of aliens to remain in this country pending judicial review. Before IIRIRA, the filing of a petition for review automatically stayed removal unless the court of appeals directed otherwise. 8 U. S. C. §1105a(a)(3) (1994 ed.) (repealed 1996). IIRIRA repealed this provision and, to drive home the point, specifically provided that "[s]ervice of the petition [for judicial review] . . . *does not* stay the removal of an alien pending the court's decision on the petition, unless the court orders otherwise." §1252(b)(3)(B) (2006 ed.) (emphasis added). In addition, "many provisions of IIRIRA are aimed at protecting the Executive's discretion from the courts." *Reno* v. *American-Arab Anti-Discrimination Comm.*, 525 U. S. 471, 486 (1999) (emphasis deleted). Indeed, "protecting the Executive's discretion from the courts . . . can fairly be said to be the theme of the legislation." *Ibid.* Section 1252(f)(2),

which provides that a court may not block removal during the judicial review process unless a heightened standard is met, fits perfectly within this scheme.

The Court's interpretation, by contrast, produces anomalous results. If §1252(f)(2) does not provide the standard to be used by the courts in determining whether an alien should be permitted to remain in this country pending judicial review, then IIRIRA left the formulation of that standard entirely to the discretion of the courts. A Congress that sought to expedite removal and limit judicial discretion is unlikely to have taken that approach.

More important, if §1252(f)(2) does not set the standard for blocking removal pending judicial review, then, as the Court concedes, "the exact role of subsection (f)(2) . . . is not easy to explain." *Ante*, at 12. "In construing a statute we are obliged to give effect, if possible, to every word Congress used." *Reiter* v. *Sonotone Corp.*, 442 U. S. 330, 339 (1979). We should not lightly conclude that Congress enacted a provision that serves no function, and the Court's hyper-technical distinction between an injunction and a stay does not provide a sufficient justification for adopting an interpretation that renders §1252(f)(2) meaningless. That result is particularly anomalous in the context of §1252(f)(2), which Congress said should apply "[n]otwithstanding any other provision of law."

3

Third, if stays and injunctions really are two entirely distinct concepts, the order that petitioner sought here is best viewed as an injunction. Insofar as there is a difference between the two concepts, I agree with the Court that it boils down to this: "A stay 'simply suspend[s] judicial alteration of the status quo,'" whereas an injunction "'grants judicial intervention that has been withheld by lower courts.'" *Ante*, at 9 (quoting *Ohio Citizens for Responsible Energy, Inc.* v. *NRC*, 479 U. S. 1312, 1313 (1986)

(SCALIA, J., in chambers)). See also Black's 1413 (defining a stay as an "act of arresting a judicial proceeding by the order of a court"). Here, petitioner did not seek an order "suspend[ing] judicial alteration of the status quo." Instead, he sought an order barring Executive branch officials from removing him from the country. Such an order is best viewed as an injunction. See *McCarthy* v. *Briscoe*, 429 U. S. 1317, 1317, n. 1 (1976) (Powell, J., in chambers) (although applicants claimed to seek a "stay," the court granted an "injunction" because "the applicants actually [sought] affirmative relief" against executive officials).

Even if petitioner had sought to block his removal pending judicial review of the order of removal, any interim order blocking his removal would best be termed an injunction. When the Board affirmed petitioner's final removal order in 2006, it gave the Executive Branch all of the legal authority it needed to remove petitioner from the United States immediately. An order preventing an executive officer from exercising that authority does not "simply suspend judicial alteration of the status quo." *Ohio Citizens for Responsible Energy*, *supra*, at 1313. Instead, such an order is most properly termed an injunction because it blocks executive officials from carrying out what they view as proper enforcement of the immigration laws. And in that regard, it is significant that the Hobbs Act—which governs judicial review under IIRIRA, see 8 U. S. C. §1252(a)(1)—refers to an "application for an *interlocutory injunction* restraining or suspending the enforcement, operation, or execution of, or setting aside" a final administrative order. 28 U. S. C. §2349(b) (emphasis added).

In the present case, however, petitioner did not seek to block his removal pending judicial review of his final order of removal. That review concluded long ago. What petitioner asked for was an order barring the Executive Branch from removing him pending judicial review of an

entirely different order, the Board's order denying his third motion to reopen the proceedings. Petitioner's current petition for review does not contest the correctness of the removal order. Rather, he argues that the Board should have set aside that order due to alleged changes in conditions in his home country. A motion to reopen an administrative proceeding that is no longer subject to direct judicial review surely seeks "'an order *altering* the status quo.'" *Ante,* at 9 (quoting *Turner Broadcasting System, Inc.* v. *FCC*, 507 U. S. 1301, 1302 (1993) (Rehnquist, C. J., in chambers)). Consequently, the relief that petitioner sought here is best categorized as an injunction.

### III

In addition to its highly technical distinction between an injunction and a stay, the Court advances several other justifications for its decision, but none is persuasive.

The Court argues that applying 8 U. S. C. §1252(f)(2) would "deprive" us of our "'customary' stay power." *Ante*, at 13. As noted above, however, restricting judicial discretion was "the theme" of IIRIRA, *American-Arab Anti-Discrimination Comm.*, 525 U. S., at 486. And Congress is free to regulate or eliminate the relief that federal courts may award, within constitutional limits that the Court does not invoke here. Cf. *INS* v. *St. Cyr*, 533 U. S. 289, 299–300 (2001).

The Court opines that subsection (b)(3)(B)—not subsection (f)(2)—is "the natural place to locate an amendment to the traditional standard governing the grant of stays." *Ante*, at 11. But I would not read too much into Congress' decision to locate such a provision in one subsection rather than in another subsection of the same provision. In addition, there is also nothing "unnatural" about Congress' use of two separate subsections of §1252 to address a common subject. For example, §1252(a)(2)(A) lists several

matters over which "no court shall have jurisdiction to review," while §1252(g) lists another subject over which "no court shall have jurisdiction to hear any cause or claim." The fact that those provisions are separated by five subsections and framed in slightly different terms does not justify ignoring them, just as the space and difference in terminology between §1252(b)(3)(B) and §1252(f)(2) cannot justify the Court's result.

Noting that the term "stay" is used in §1252(b)(3)(B) but not in §1252(f)(2), the Court infers that Congress did not intend that the latter provision apply to stays. *Ante*, at 10–11. But the use of the term "stay" in subsection (b)(3)(B) is easy to explain. As noted above, prior to IIRIRA, the Immigration and Nationality Act provided for an automatic "stay" of deportation upon the filing of a petition for review unless the court of appeals directed otherwise. See 8 U. S. C. §1105a(a)(3) (1994 ed.) (repealed 1996). The statute provided:

> "The service of the petition for review upon [the Attorney General's agents] shall *stay* the deportation of the alien pending determination of the petition by the court . . . unless the court otherwise directs . . . ." *Ibid.* (emphasis added).

In IIRIRA, Congress repealed that provision and, to make sure that the pre-IIRIRA practice would not be continued, enacted a new provision that explicitly inverted the prior rule:

> "Service of the petition on the officer or employee does not *stay* the removal of an alien pending the court's decision on the petition, unless the court orders otherwise." §1252(b)(3)(B) (2006 ed.) (emphasis added).

It is thus apparent that §1252(b)(3)(B) uses the term "stay" because that is the term that was used in the provision that it replaced.

Finally, the Court worries that applying §1252(f)(2) would create inequitable results by allowing removable aliens to remain in the United States only if they can prove the merits of their claims under a "higher standard" than the one they would otherwise have to satisfy. *Ante*, at 13. But as the Court acknowledges, *ante*, at 4, IIRIRA specifically contemplated that most aliens wishing to contest final orders of removal would be forced to pursue their appeals from abroad. See §306(b), 110 Stat. 3009–612 (repealing 8 U. S. C. §1105a (1994 ed.)). If such an alien seeks to remain in the United States pending judicial review, IIRIRA provides that the alien must make the heightened showing required under §1252(f)(2). Congress did not think that this scheme is inequitable, and we must heed what §1252(f)(2) prescribes.

\* \* \*

In my view, the Fourth Circuit was correct to apply §1252(f)(2) and to deny petitioner's application for an order barring his removal pending judicial review. Therefore, I would affirm the judgment of the Court of Appeals.